**In re Diana HOFER**

**HOFER**

**v.**

**MERCHANTS STATE BANK**

**Bankruptcy No. 485-00047.**
**Adv. No. 485-0014.**

United States Bankruptcy Court,
D. South Dakota.

Dec. 20, 1985.

C.E. Light and Jerry L. Pollard, Yankton, S.D., for debtor/plaintiff Diana Hofer.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for defendant.

PEDER K. ECKER, Bankruptcy Judge.

This case is before the Court on a complaint to recover funds and to determine secured status filed on behalf of the debtor, Diana Hofer, on February 19, 1985. The defendant, Merchants State Bank of Freeman, South Dakota, answered, and the trial was held on April 30, 1985. The matter was taken under advisement and the parties submitted briefs. The issue is whether the renewal notes signed by Diana Hofer following her husband's incarceration were intended to be a novation of the previous indebtedness of Jennis Hofer.

Debtor/Plaintiff Diana Hofer and her husband, Jennis Hofer, have operated a farming operation south of Freeman, South Dakota, since the time of their marriage approximately twenty-two years ago. Prior to December, 1982, the Hofers did their banking business with the First National Bank. In December, 1982, they established a lending relationship with Merchants State

Bank. A security agreement was executed by Jennis Hofer on December 1, 1982, in which he pledged all of the personal property assets of the Hofer farm. Funds were first advanced by the bank on December 10, 1982, for the purpose of paying off the prior debt to First National Bank. Thereafter, advances for the farm line of credit were made through May of 1984. During this time, old loans were repaid or renewed and new loans were made. Jennis signed most of the notes, but occasionally Diana signed notes, also, for the farm line of credit. The funds advanced were placed in a joint checking account upon which both Jennis and Diana Hofer were authorized to sign and draw checks. The parties do not dispute the validity of the original security interest in the farm assets.

In May of 1984, Jennis Hofer was incarcerated and was unable to conduct the farming business. Diana Hofer operated the farm from that time on, including conducting business with Merchants State Bank. By October 15, 1984, all of the notes coming due at the bank after the time of Jennis Hofer's incarceration had been renewed by the signature of Diana Hofer. In January of 1985, Diana Hofer sold some livestock and placed the proceeds in accounts in locations other than at the Merchants State Bank. The bank subsequently made claim to these monies, maintaining that they were proceeds from the sale of the bank's collateral, as evidenced by the original security agreement pledging the assets of the farm operation executed by Jennis Hofer in December, 1982. Diana Hofer filed for Chapter 11 relief in bankruptcy on January 31, 1985. On February 19, 1985, she filed this adversary proceeding.

After careful consideration of the facts and the relevant authorities, the Court holds that the renewal notes signed by Diana Hofer following her husband's incarceration were not intended to be a novation of the previous indebtedness of Jennis Hofer, and principles of estoppel now prevent her from claiming otherwise.

Novation is the substitution by contract of a new obligation for an existing one. S.D.C.L. § 20–7–5. Novation is made: (1) By the substitution of a new obligation between the same parties with intent to extinguish the old obligation; (2) By the substitution of a new debtor in place of the old one with intent to release the latter; or (3) By the substitution of a new creditor in place of the old one with intent to transfer the rights of the latter to the former. S.D.C.L. §§ 20–7–6, 20–7–7, 20–7–8. Novation is not effective unless there is an intention on the part of the parties to extinguish the old obligation by substituting the new one therefor. *Hyde v. Hyde*, 78 S.D. 176, 99 N.W.2d 788 (1959). This general rule is further explained in 58 Am.Jur.2d, *Novation* § 20:

> In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case, then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances.

In the instant case, there are no facts to support the proposition that the notes signed by Diana Hofer were intended to effect a novation of the previous indebtedness, which was secured by the farm assets through the December, 1982, security agreement executed by her husband. The parties stipulated that had he been called to testify, Harris Hofer, the bank officer, would have testified that he did not agree to any change in the previously existing lending relationship between the bank and Jennis and Diana Hofer and that the notes currently outstanding were, in his opinion, renewals of the pre-existing debt. In addition, Diana Hofer, herself, stated in her

deposition that the basis for her position in this adversary proceeding was not based upon anything negotiated with the bank but upon the post-petition opinions of her attorneys. (Diana Hofer Deposition, pp. 32–33.) Although this is an example of rather casual banking practice, it is easy to see how the situation developed. The officer of the local small-town bank enters into a financing arrangement with long-time, local family farmers, who are also his cousins. When the husband is arrested on criminal charges in an unrelated matter and incarcerated, the bank continues to finance the family farming operation, dealing through the wife exclusively because the husband is not able to conduct the business. Neither party perceived a fundamental difference in the lending relationship. Just as she had occasionally prior to her husband's incarceration, the wife signed renewal notes on the existing indebtedness.

Familiar equitable principles of estoppel also favor the bank's position. Diana Hofer accepted the benefits of continued financing through the bank, and, in fact, until this adversary proceeding was filed, she believed that the farm assets were pledged to secure the bank debt. The Court cannot equitably allow her to now claim otherwise.

Accordingly, based on the foregoing, counsel for the bank is directed to submit findings of fact and conclusions of law, not inconsistent with this letter decision, pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52, and draft an appropriate order and judgment in accordance with Bankr.R.P. 9021.